IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH MICHAEL VILLARREAL,<br><br>Defendant. | CR 17–15–M–DLC<br><br><br><br>ORDER |

Defendant Joseph Michael Villarreal ("Villarreal") filed a combined motion to sever and motion in limine to limit and define the Government's trial proof. (Doc. 17). The Government opposes these motions. (Doc. 23.)

Villarreal has been charged with seven counts of wire fraud pursuant to 18 U.S.C. § 1343 and three counts of money laundering pursuant to 18 U.S.C. § 1957. (Doc. 2.) Counts I-VII allege that Villarreal "solicited funds from several individuals . . . that were supposed to be used to purchase hay on the wholesale market to re-sell on the retail market and to refine and optimize a farming and ranching operation," but used the funds for "personal and unrelated business expenditures and failed to return any money." (*Id.* at 2.) Villarreal contends that the Government's alleged scheme is actually "two distinct and separate schemes to

defraud," specifically, the "hay scheme" and "ranch scheme." (Doc. 18 at 2.) Villarreal argues these separate schemes are misjoined in the indictment and require severance pursuant to Fed. R. Crim. P. 14. (*Id.*) The Government counters that the indictment "identifies one broad scheme to defraud and any confusion about the bounds of the scheme can be rectified with a unanimity jury instruction." (Doc. 23 at 2.)

The Government proposes to offer evidence at trial of Villarreal's 1996 conviction for two counts of theft in Yavapai County, Arizona. (Doc. 16.) The Government contends the evidence is admissible under Rule 404(b) because it is offered to prove Villarreal's "motive, intent, plan, knowledge, and absence of mistake or accident." (*Id.* at 2.) Villarreal contends that the prior conviction "does not prove a material point and is extremely stale." (Doc. 18 at 10.) Villarreal also seeks: to limit the Government's use of unidentified evidence which may have a "tenuous or non-existent nexus to the charges;" to preclude any testimony or evidence concerning his purported military service; and to require the Government to establish the relevance and nexus of firearm and ammunition purchases prior to admission. (*Id.* at 10–12.)

For the reasons explained, both Villarreal's motion to sever and associated motion in limine will be denied. Although the Court is inclined to admit evidence

of the 1996 conviction, the ruling on this motion in limine is reserved until trial. Finally, the Court reserves ruling on Villarreal's remaining motions in limine.

## DISCUSSION

### I.  Motion to Sever

The Federal Rules of Criminal Procedure allow joinder of separate counts in Rule 8(a), providing that an indictment may charge separate counts if the offenses charged are of the "same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8 has been broadly construed in favor of initial joinder. *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2006); *United States v. Dowd*, 451 F.3d 1244, 1249 (11th Cir. 2006); *United States v. Boulanger*, 444 F.3d 76, 87 (1st Cir. 2006). By allowing either party to move for severance of counts, Fed. R. Crim. P. 14 recognizes that joinder, even when proper under Rule 8(a), may be prejudicial to either a defendant or the Government. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). However, the mere possibility of prejudice is not enough, "Rule 14 sets a high standard for a showing of prejudice" and gives district courts "wide discretion in ruling on a severance motion." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994); *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1209 (9th Cir. 1991). It is well established that defendants are "not entitled to

severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.  Further, Rule 14 does not require severance even when prejudice is shown; rather, "it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39.

Villarreal contends that Counts I through VI, which he refers to as the "hay scheme," are unrelated to Count VII, the "ranch scheme," and the ranch scheme's attendant money laundering charges, Counts VIII through X.  (Doc. 18 at 6.)  The indictment alleges that Villarreal executed a material scheme to defraud by "means of material false and fraudulent pretenses and representations" designed to induce several individuals into giving him money which was "supposed to be used to purchase hay on the wholesale market to re-sell on the retail market *and* to refine and optimize a farming and ranching operation."  (Doc. 2 at 2 (emphasis added).)  Villarreal emphasizes the word *and* in the above allegation to support his position that the indictment has "cobble[d] together unrelated accusations."  (Doc. 18 at 6.)  Villarreal's argument is that solely because all victims were induced into giving him money to their detriment by allegedly false statements and representations does not mean there was a common scheme.  (*Id.* at 6–7.)

Based on his contention that there was not a common scheme, Villarreal argues that the trial testimony of the different alleged victims will be completely

-4-

unrelated. (*Id.* at 6.) Two victims would testify about his allegedly false assertions and representations concerning buying and selling hay and one would testify about his allegedly false assertions and representations concerning improving ranch operations. (*Id.* at 6–7.) Villarreal asserts that allowing the Government to call all of these alleged victims in one trial will result in testimony concerning "unrelated false promises by unrelated parties who happened to be involved in unsuccessful business transactions" with him. (*Id.* at 7.) Villarreal argues that this will confuse and prejudice the jury into finding a "uniting scheme or plan somewhere in the mix." (*Id.*)

The Government responds by arguing that the motion to sever should be denied for three reasons. (Doc. 23 at 8.) First, Villarreal's argument relies upon facts outside of the indictment which are not generally considered when deciding the validity of joinder, but which still support the finding of one scheme. (*Id.*) Second, the counts are properly joined as constituting one common scheme to defraud. (*Id.*) Lastly, even if the Court were to find two separate schemes, the evidence of each would be admissible to prove the other. (*Id.*)

The determination of whether joinder is appropriate is normally "determined solely by the allegations in the indictment." *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2006). However, factors such as commonality of testimonial

evidence among counts have been examined by courts reviewing the propriety of an initial joinder. *Id.* The Ninth Circuit in *United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2006), established that courts analyzing whether counts are of the "same or similar character" should consider such factors "as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims."

These factors justify joinder in this case. Villarreal's motion challenges the joinder of different counts of wire fraud alleged as part of the same scheme. Since all are charged under the same statute, the elements to be proven on these counts are identical.[1] The seven counts all arise within a two-year period, making them temporally connected. As to overlapping evidence, although the witnesses will be different between Counts I–VI and Count VII, the evidence is likely to be very similar. Contrary to Villarreal's assertion, the evidence will not be unrelated since all alleged victims will likely testify as to being entrapped by similar misrepresentations and false pretenses concerning the delivery of agricultural

---

[1] The money laundering counts are charged under a separate statute, however, Villarreal acknowledges that these charges are "attendant" upon certain wire fraud counts and only challenges their joinder based upon the purported misjoinder of Count VII. (Doc. 18 at 6.) Since the Court finds that Count VII is properly joined, the Court does not analyze whether the "attendant money laundering charges" are properly joined. (*Id.*)

goods or services.  This common means of defrauding further establishes a common modus operandi between the crimes and logically supports the Government's allegation of a unifying scheme.  As to the identity of the victims, the indictment indicates that Villarreal targeted one industry, agriculture, making the victims identity similar in this regard.  Lastly, while the physical locations of the alleged acts span several states, the Court finds the failure of this factor is outweighed by the satisfaction of the rest.  Therefore, the Court finds that the counts were properly joined as being of the "same or similar character" under Fed. R. Crim. P. 8(a).

Before disposing of this issue, the Court must address the possibility of a duplicity argument which the Government believes has been implicitly raised by Villarreal.  (Doc. 23 at 7.)  The Government asserts that Villarreal's position—that proceeding to a trial allowing testimony concerning what he claims are two different schemes will prejudicially allow the jury to conflate the unrelated evidence into a unifying scheme—invokes the argument that the indictment is duplicitous.  "An indictment is considered duplicitous if a single count combines two or more different offenses."  *United States v. Reneria*, 557 F.3d 1003, 1007 (9th Cir. 2009) (citation omitted).  One danger of duplicity "is that a jury could find a defendant guilty on a count without reaching a unanimous verdict on the

commission of an offense." *Id.* at 1008 (citation omitted). Accordingly, the Court will address this issue.

The "central question in a duplicity review" of an indictment in a wire fraud case is "the breadth of the fraudulent activity alleged in the count," whether it is one unitary scheme to defraud. *U.S. v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir. 1983), *overruled on other grounds by United States v. Miller*, 471 U.S. 130, 135–36 (1985). Although courts have identified factors to be used to determine whether two or more schemes "could conceivably be part and parcel of the same fraudulent scheme," ultimately, the defendant's intent to defraud is the scope of a scheme to defraud. *Mastelotto*, 717 F.2d at 1244–45. This is because 18 U.S.C. § 1343, enumerating wire fraud as a crime, does not place "internal limitations" on the scope of the term. *Id.* at 1244. Accordingly, such factors as the nature of the scheme, the identity of the participants, the quality, frequency, and duration of each conspirator's transactions, and the commonality of time and goals, "assume only limited importance" in the identification of a unitary scheme. *Id.* at 1245. Instead, the limits of the scheme are defined "by the ingenuity of its participants." *Id.* Further, perpetrating fraud by employing "different means and representations, may constitute but one scheme." *Owens v. United States*, 221 F.2d 351, 354 (5th Cir. 1955). Even the existence of "several fraudulent ventures, into one of which

an unsuspecting victim may be led, does not necessarily multiply the number of schemes to defraud." *Simons v. United States*, 119 F.2d 539, 548 (1941) (*quoting Worthington v. United States*, 64 F.2d 936, 938–39 (7th Cir. 1933)). "The fraudulent scheme of the entrapper may be a single one, yet means to accomplish the fraud may be many." *Id.*

In this case, Villarreal's argument that two distinct schemes are alleged overlooks the fact that the indictment only alleges one means of perpetrating the fraud, the use of "material false and fraudulent pretenses and representations." (Doc. 2. at 2.) While Villarreal allegedly used the same means to solicit money to purportedly conduct two different agricultural business ventures, this does not mean that there were two separate schemes. Rather, the employment of the same devices to solicit money for the purchase and sale of hay and for the optimization of a ranch gives credence to the allegation that Villarreal was perpetrating a single scheme which could be proven at trial. The unifying intent here was to deceitfully engender the trust of victims through false pretenses and representations so that they would give him money to provide goods and services. Villarreal's ingenuity allowed him to create different alluring prospects to solicit the trust and money of different people and defines the scope of the scheme to defraud.

The Court finds that the indictment is not duplicitous and the alleged

conduct could be part of one single scheme to defraud because Villarreal allegedly targeted victims only in the agricultural industry and solicited money in all instances by using materially false and fraudulent pretenses and representations. Accordingly, the Court finds that the counts were appropriately joined as being of the "same or similar character," and severance is not warranted.

In order to belay possible concerns over the need for a unanimous verdict on a single unifying scheme, the jury will be instructed that the Government has to prove beyond a reasonable doubt the single or unified scheme to defraud substantially as charged in the indictment. *See Mastelotto*, 717 F.2d at 1249–50.

## II. Motions in Limine

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). A motion in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010). Evidence shall be excluded in limine only when it is shown that the evidence is "inadmissible on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N .D.Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial

so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *BNSF*, 2010 WL 4337827 at *1. "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." Rulings on motions in limine are provisional and the trial judge may always change his mind during the course of trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

    A.    **The 1996 Conviction**

        i.    **Rule 404(b)**

The Government seeks to introduce Villarreal's 1996 conviction for two counts of theft in Arizona. (Doc. 16.) Villarreal moves in limine to exclude this evidence based upon his assertion Federal Rule of Evidence 404(b) is not satisfied because the conviction "does not prove a material point and is extremely stale." (Doc. 18 at 10.)

Rule 404(b) of the Federal Rules of Evidence prohibits admission of evidence of a crime, wrong, or other act if the evidence is offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Prior act evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b)(2).

The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir. 1998). First, the evidence of other crimes must tend to prove a material issue in the case. Second, the other crime must be similar to the offense charged. Third, proof of the other crime must be based on sufficient evidence. Fourth, commission of the other crime must not be too remote in time. *Id.* Like all evidence, evidence of other crimes or wrongs must also pass Rule 403's balancing test. It is the government's burden to demonstrate the evidence meets these requirements. *Id.*

Regarding the first and second prongs, the Court concludes that in this case the Court's inquiry is largely overlapping. The relevance of the past act to Villarreal's intent with respect to the charged conduct is dependent on the past acts' similarity to the charged conduct. This is because of the nature of the Government's burden in this case.

In an attempt to carry its burden of proving the past conviction tends to prove a material issue in this case, the Government asserts that Villarreal was "essentially charged" with "failing to deliver products or services promised to his victims." (Doc. 23 at 17.) This is "exactly" what he is charged with now. (*Id.*)

The Government also posits that while the current charges of wire fraud are different than the 1996 theft charges, "both take aim at identical conduct." Accordingly, the Government asserts that the 1996 conviction is "probative of Villarreal's knowledge and specific intent to defraud," which are material issues in this case. If the past conviction is as similar as the Government claims, the Court is inclined to find the first two prongs are satisfied. Such a similar conviction would tend to establish that Villarreal knew what he was doing and intended to defraud the victims in this case.

As to the third prong, 404(b) evidence should be admitted "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *U.S. v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (*quoting Huddleston v. United States*, 485 U.S. 681, 685 (1988)). Here, the Court is convinced that if Villarreal was convicted in Arizona, the third prong has been satisfied.

Remoteness, the final prong, is of more concern. The Ninth Circuit has refused to adopt a "bright line rule regarding remoteness." *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989). Remoteness is measured by the time between the past conviction and the currently charged conduct. *See United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004); *United States v. Arambula-Ruiz*, 987 F.2d 599, 603–04 (9th Cir. 1993). The Ninth Circuit has repeatedly

upheld the admissibility of evidence over ten years old. *See, e.g.*, *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990) (10–15 years not too remote); *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (13 years not too remote). Instead of identifying a set number of years at which point a past conviction becomes too remote, the Ninth Circuit has stated that remoteness depends "upon the theory of admissibility and the similarity of the acts," with some remote acts being "extremely probative and relevant." *Johnson*, 132 F.3d at 1283 (*quoting United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989)).

The Fifth Circuit has specified that past convictions involving fraud or forgery may have a longer shelf-life than other convictions in regard to proving intent to defraud. In *United States v. San Martin*, 505 F.2d 918, 922–23 (5th Cir. 1974), the Fifth Circuit clarified that a rule of thumb measuring "the number of years that have elapsed between the prior crime and the present offense charged" cannot be the test. The Court established a different test:

> The better test . . . is whether the prior crime is similar in nature and in its material elements to have clearly probative value with respect to the intent of the accused at the time of the offense charged. Under this test, prior crimes involving deliberate and carefully premeditated intent—*such as fraud and forgery*—are far more likely to have probative value *with respect to later acts* than prior crimes involving a quickly and spontaneously formed intent—such as assault.

*Id.* This Court finds the reasoning of the Fifth Circuit to be in-line with the Ninth Circuit's approach to questions of remoteness. *See, e.g.*, *Spillone*, 879 F.2d at

518–19. Accordingly, the nature, similarity, and "specific intent" of the prior conviction will influence the determination of whether a prior crime is too remote for admissibility. *San Martin*, 505 F.2d at 923.

In the present case, if Villarreal's prior conviction is as described, it is "sufficiently similar to the charged conduct to render it probative despite the passage of time." *Johnson*, 132 F.3d at 1283. Villarreal was convicted of "two counts of theft in Yavapai County, Arizona, on May 14, 1996." (Doc. 16 at 2.) The indictment indicates the instant prosecution is for acts beginning approximately in November of 2011. (Doc. 2. at 2.) The span of time between the current conduct and the past offense is certainly long—15 years—and is arguably near the outer limits of admissibility. However, if Villarreal was indeed convicted of theft for "failing to deliver products or services promised to his victims," the conviction would be very similar in nature to his currently pending charges. (Doc. 23 at 17.) Thus, it would be highly relevant and probative of Villarreal's intent to defraud and absence of mistake. (Doc. 23 at 20.)

The Court's inclination to find this evidence admissible is bolstered by the fact that intent will likely be a disputed issue at trial. The Ninth Circuit has "routinely held that circumstances surrounding an alleged crime become *more* relevant when the defendant makes his intent a disputed issue." *United States v. Curtin*, 489 F.3d 935, 952 (9th Cir. 2007). The Government contends that

Villarreal's defense will "likely hinge on whether he intended to defraud his victims or simply engaged in questionable but non-criminal business practices." (Doc. 23 at 20.)  To be sure, Villarreal has already argued this point in his motion to sever by contending that the Government should not be able to admit a "laundry list of unrelated false promises by unrelated parties *who happened to be involved in unsuccessful business transactions*" with him.  (Doc. 18 at 7 (emphasis added).) If Villarreal has employed similar tactics to solicit money before, then those prior acts would be highly relevant to his intent to defraud in the instant case.

> **ii.     Rule 403**

It remains to be determined whether the proposed evidence should be excluded pursuant to Rule 403 of the Federal Rules of Evidence.  Rule 404(b) evidence generally carries with it some prejudicial impact.  Nevertheless, the Court concludes that if Villarreal's conviction is for nearly identical conduct, the evidence passes Rule 403's balancing test.

For all the reasons described above, Villarreal's conviction appears to be highly probative of his knowledge and intent to defraud beginning in 2011.  The potential prejudicial effect of this evidence does not substantially outweigh its probative value.

Notwithstanding the Court's inclination to find that Rules 403 and 404(b) have been satisfied, and to admit this evidence, the Court reserves ruling on the

admissibility of Villarreal's 1996 conviction until such time as similarities between the past conduct and current offense may be conclusively drawn. The Court will be looking to the Government to provide evidence of the details of the 1996 conviction at trial.

### B. Other Investors or Locations Not Named or Specified

Villarreal warns that there may be "other items of evidence" with a "tenuous or non-existent nexus to the charges" which may or may not be "inextricably intertwined" to the charged scheme and may or may not be subject to Rule 404(b) analysis. (Doc. 18 at 10.) Villarreal acknowledges that it may be "impossible" for the Court to fashion limits on the Government's proof along these lines at this point in the proceeding, but wishes for the Court to be in "the best position to rule on the issue at the appropriate time." (*Id.* at 10–11.) The Court construes this warning as part and parcel of Villarreal's Motion in Limine which is denied at this time as premature. The Court reserves ruling on the admissibility of such evidence until such time as the Court is made aware of the breadth and character of such evidence.

### C. Military Record

Villarreal next moves the Court to exclude any statement where he allegedly misrepresented his military background under Federal Rule of Evidence 401 and 403. (Doc. 18 at 11.) Villarreal suggests that any reference to him

misrepresenting his military history would itself be a misrepresentation making it irrelevant and "highly prejudicial." (*Id.*) The Government counters that this motion is unripe, and, if not, that Villarreal's alleged references to purportedly serving in the military are relevant because they were "intended to engender trust and confidence" in furtherance of his scheme to defraud. (Doc. 23 at 21.) The Court agrees that now is not the time for resolution of the admissibility of this evidence. Accordingly, the Court reserves ruling on the admissibility of this evidence until trial.

        **D.**     **Firearm and Ammunition Purchases**

Lastly, Villarreal requests that the Government be precluded from introducing evidence tending to show that Villarreal used the solicited money to purchase firearms and ammunition without first establishing the nexus and relevance of these purchases to the alleged crime. Additionally, Villarreal asserts that evidence of multiple firearm purchases that are not related to the crime are inadmissible because of their cumulative and prejudicial effect. (Doc. 18 at 11–12.) The Government again counters that the motion is not ripe. (Doc. 23 at 21.) The Government also argues that "how a defendant spends the money he gets from his victims is probative of whether he intended to commit a crime." (*Id.*) The evidence is useful to allow jurors to assess whether Villarreal's expenditures "illustrate a good faith effort to fulfill the promises he made," or his intent to

defraud his victims. (*Id.* at 21–22.) Lastly, the Government states that firearm and ammunition purchases would not likely be considered damning by a Montana jury. Again, the Court agrees that resolution of this issue is not yet ripe for decision. Therefore, the Court reserves ruling on the admissibility of this evidence until trial.

IT IS ORDERED that Villarreal's Motion to Sever and associated Motion in Limine (Doc. 17) is DENIED. The Court reserves ruling on Villarreal's remaining motions in limine, consistent with this Order.

DATED this 16th day of October 2017.

_____
Dana L. Christensen, Chief District Judge
United States District Court